UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>           **Plaintiff,**<br>     **v.**<br><br>**SAEVE EVANS**<br><br>           **Defendant.** | **Case No. 1-22CR63 (RCL)** |

## MR. EVANS'S REPLY TO THE GOVERNMENT'S OPPOSITION TO DISMISS INDICTMENT PURSUANT TO FED. R. CRIM. P. 48 (a) AND 12(b)(3)(A)(ii).

In its Opposition to Mr. Evans's Motion to Dismiss, the government fails to address the crux of Mr. Evans's harassment claim and Judge Raffinan's ruling that the government's conduct rises to the level of objective harassment of Mr. Evans. That is, that the government has moved Mr. Evans's case to federal court while attempting to keep open the possibility of prosecuting him in Superior Court, even while claiming that it does not intend to return to Superior Court. The government also wrongly argues that issue-preclusion does not apply because jeopardy has not attached. Finally, the government does not adequately explain why it took over ten years to prosecute the case, even when it concedes the investigation had all but concluded in 2014. The inescapable conclusion is that the delay resulted in prejudice to Mr. Evans.

1. **The government has failed to address the crux of the Superior Court's harassment finding.**

The government spends much of its opposition explaining why it moved this case to federal court. But it does not account for the fact that—despite its claims that it does not intend to return to Superior Court—the government has insisted that it maintain an opportunity to prosecute Mr. Evans in Superior Court. This sort of gamesmanship is what caused Judge Raffinan to find that the government's conduct has risen to the level of objective harassment and what Rule 48(a) was designed to protect. *See United States v. Pitts,* 331 F.R.D. 199 (D.D.C. 2019)(dismissing indictment with prejudice and recognizing that "other judges in this district have similarly dismissed cases with prejudice when the government's strategy was to seek dismissal without prejudice in order to bring the cases again under more advantageous circumstances.")(internal citations omitted);*United States v. Poindexter*, 719 F. Supp. 6, 12 (D.D.C. 1989) (allowing the government to proceed to trial on some charges and then re-indicting at a later, unknown date was a process that "would not be fair to the defendant." ).

Because the government's conduct *overall* resulted in "objective harassment" of Mr. Evans, this Court should dismiss the indictment. *See Pitts*, 331 F.R.D. at 203 (explaining that the question is not whether the government was acting in bad faith, but rather whether the actions of the government objectively amounted to harassment).

2. **Jeopardy need not attach in order for common law issue preclusion to apply.**

The government argues that this Court is not bound by the Superior Court's Order because jeopardy had not attached. Setting aside that the government strategically moved the case before jeopardy *could* attach and now seeks to benefit from this strategy by keeping the possibility of retrial available, the D.C. Circuit's decision in *Laughlin v. United States*, 344 F.2d 187 (D.C. Cir. 1965)[1] is strong support for Mr. Evans's position that jeopardy need not attach in order for common law issue preclusion to apply. The *Laughlin* case involved dismissal of an indictment, as does this case, and the *Laughlin* court held, "it is well established that the principles of collateral estoppel apply in criminal, as well as in civil, litigation." 344 F.2d at 189-90. Critically, the cases cited in the footnote by the *Laughlin* court to support this proposition make clear that the application in criminal cases contemplated by the *Laughlin* court is in no way limited by the attachment of jeopardy. *Id.* at 190 n.11. Most compelling is the language of Justice Holmes in *United States v. Oppenheimer*, 242 U.S. 85, 87 (1916), a case cited in the relevant *Laughlin* footnote:

---

[1] *Laughlin* is binding precedent in local District of Columbia courts. *See M.A.P. v. Ryan*, 285 A.2d 310 (D.C. 1971) (according binding effect to D.C. Circuit opinions rendered prior to February 1, 1971); *Bethea v. United States*, 365 A.2d 64, 71 (D.C. 1976) (holding such opinions "remain valid and binding case law in the District of Columbia court system until such time as they may be modified or set aside by" the District of Columbia Court of Appeals). It is strong support for Mr. Evans's position that jeopardy need not attach in order for common law issue preclusion to apply in a criminal case. The government's reliance on *United States v. McMillian*, 898 A.2d 922 (D.C. 2006), however, is misplaced. In that case, the D.C. Court Appeals held that a ruling on a suppression motion in a separate case pertaining to a separate murder did not bind the judge presiding over a different murder. Because the Court of Appeals was not addressing a case "involving the relitigation or retrial of [the same] murder," the Court found that they were not "confronted with a question of direct estoppel." *United States McMillian*, 898 A.2d at 932.

3

> [T]he proposition of the government is that the doctrine of res judicata does not exist for criminal cases except in the modified form of the 5th Amendment, that a person shall not be subject for the same offense to be twice put in jeopardy of life or limb; and the conclusion is drawn that a decision upon a plea in bar cannot prevent a second trial when the defendant never has been in jeopardy in the sense of being before a jury upon the facts of the offense charged. It seems that the mere statement of the position should be its own answer. It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt. . . . [T]he 5th Amendment was not intended to do away with what in the civil law is a fundamental principle of justice.

*United States v. Oppenheimer*, 242 U.S. 85, 87-89 (1916); *see also United States v. DeAngelo*, 138 F.2d 466, 468 (3d Cir. 1943) (cited in *Laughlin*) ("The conclusiveness of a fact which has been competently adjudicated by a criminal trial is not confined to such matter only as is sufficient to support a plea of double jeopardy. . . . The matter is one of collateral estoppel of the prosecutor."). Any local District of Columbia court would be bound by *Laughlin*, as well as *Oppenheimer*, to apply collateral estoppel to preclude re-litigation of the Rule 48(a) issue should it arise again in Superior Court, irrespective of the prior attachment of jeopardy; by virtue of the Full Faith and Credit Act, this Court must do the same.[2]

### 3. The government provides no reasonable explanation for the delay in prosecuting Mr. Evans. As a result of this delay, Mr. Evans's ability to defense this case has been prejudiced.

The government all but acknowledges that its investigation into the homicide of Kareem Ware concluded by 2014. Gov. Opp., ECF. No. 38. Yet it offers no

---

[2] Certainly, the government's filing of a motion for reconsideration, no matter how many pages, does not render Judge Raffinan's judgment unfinal. If that were the case, parties could always file motions for reconsideration to prevent collateral estoppel to take effect.

reasonable explanation for the delay in prosecuting the case. This delay has resulted in tactical advantage for the government. *See United States v. Foxman,* 87 F.3d 1220 (11th Cir. 1996) ("[T]he critical element [in determining whether a due process violation has occurred] is that the government makes a judgment about how it can best proceed with litigation to gain an advantage over the defendant and, as a result of that judgment, an indictment is delayed."). As set forth in his Motion to Dismiss, and in numerous other ways, ECF. No. 47, this delay has resulted in prejudice to Mr. Evans.

In his motion, Mr. Evans listed several categories of evidence that have been compromised by the passage of time—the receded memory of an eyewitness who provided an exculpatory description of the individual the government claims to be Mr. Evans; the death of an exculpatory witness who would have directly contradicted the cooperating witness upon whom now the government relies; the poor quality of the photos of the interior of the SUV and loss of the original film. *See* ECF. No. 47 at 16-19.

The defense has addressed the quality of the photos in its supplemental filing to Mr. Evans's Motion to Dismiss or Sanction, although only after that filing did the government disclose that law enforcement inexplicably destroyed the film that could be used to make copies of the photos the government. As a result, the defense does not have its own set of original photos of the interior of the SUV, making it logistical challenge to share the original photos with a defense expert. *See* ECF. No. 48.

As for the exculpatory witness, Scorpio Phillips, the government contends that

5

he would not have been exculpatory and speculates that had he been alive, he would have asserted a Fifth Amendment privilege. Yet, the government cannot and does not dispute that Mr. Phillips *directly contradicts* their cooperator's (W8) account. According to the government, W8 will testify that shortly after the murder, Mr. Evans confessed to W8 that he had killed Mr. Ware and that Mr. Phillips was involved. Moreover, according to W8, Mr. Phillips was also eager to cooperate with the government. Mr. Phillips could have testified for the government and the defense, as well as provided additional investigative leads to contradict W8's false account. In relying on W8, the government leaves out that W8 has serious credibility issues. He has twice been acquitted of homicide and has a significant criminal record. He received relief from a mandatory life sentence to testify against Mr. Evans. Not only that, this is not the first time W8 has claimed that someone "confessed" to murder to him in order to benefit himself. In 2003, W8, hoping to received benefit in a federal gun case, claimed that another individual had confessed to murder in an entirely different case. Especially in light of W8's credibility issues, had Mr. Phillips been available to refute W8's story, Mr. Phillips and Mr. Evans may not have ever been charged.

    The prejudice to Mr. Evans does not end there however. As it turns out, these are not only the ways in which Mr. Evans has been prejudiced by the unreasonable and inexplicable passage of time. Indeed, as defense counsel has been preparing for trial in the past weeks, the loss of more evidence has emerged. For example, in 2009, a detective noted that the bank card found in the jacket at the scene of the bailout

had not been used in two months leading up to the murder. Those records no longer exist and Mr. Evans cannot subpoena them. Another witness, identified as W4—a witness who provided an account different from W1 who is the government's primary eyewitness and an account different from W8—is no longer locatable.[3] The phone of one critical witness has been destroyed, despite having been in law enforcement's possession years ago. And across the board, rather than be able to make his own decisions about how to investigate, Mr. Evans is limited to the documents the government selectively chose to preserve. These are just examples of the myriad investigative leads that have been foreclosed to Mr. Evans due to the passage of time and the ways in which he has been hampered in presenting a defense.

## Conclusion

For the reasons herein and in Mr. Evans's Motion to Dismiss, the Court should dismiss the indictment under Rule 48(a), Rule 12, and the Due Process Clause.

Respectfully submitted,
A. J. Kramer
Federal Public Defender

\_\_\_\_/s/_____
Elizabeth Mullin
Assistant Federal Public Defender
625 Indiana Ave NW, Suite 550
Washington, DC 20004
(202) 208-7500
Elizabeth_Mullin@fd.org

---

[3] There is some confusion as to the W4's identity as the witness may have provided false information to the police. The government has provided what may be contact information for W4 but it remains to be seen whether the witness will be locatable ten years after the offense.

Dominique D. Winters
Deputy Trial Chief
Public Defender Service
633 Indiana Avenue NW
Washington, DC 20004
T: (202) 824-2387
F: (202) 824-2117
dwinters@pdsdc.org

Stephany Reaves
Munger, Tolles & Olson LLP
601 Massachusetts Avenue NW
Suite 500e
Washington, DC 20001-5369
DC Bar No. 1034250
stephany.reaves@mto.com
Phone: 202-220-1126
Fax: 202-220-2300