UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

SAEVE EVANS,

      *Defendant*.

Case No. 22-cr-63 (RCL)

## MEMORANDUM OPINION

Defendant Saeve Evans is charged with one count of kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a). Def.'s R. 48 Mot., ECF No. 45, at 1 n.1. He entered a plea of not guilty and is scheduled to stand trial on November 14, 2022. *See* Minute Entry (March 10, 2022); Minute Entry (Oct. 14, 2022). Before the Court are Mr. Evans's two motions to dismiss the indictment. Def.'s R. 48 Mot.; Def.'s R. 16 Mot., ECF No. 23. Upon consideration of the parties' filings, the record therein, and the applicable law, the Court will **DENY** both of those motions.

### I.     BACKGROUND

The charge against Mr. Evans relates to the May 2, 2009 death of Kareem Ware. Def.'s R. 16 Mot. at 2. Mr. Ware died of three gunshot wounds to the head while riding in the front seat of a Chrysler Pacifica sport utility vehicle ("SUV"). *Id.* at 3. The SUV's journey began in Maryland and ended in Washington, D.C. *Id.* at 2–3.

In May 2019, the government filed a criminal complaint against Mr. Evans in D.C. Superior Court, charging him with first-degree murder while armed and felony murder, in violation of D.C. law. Gov't Opp'n to Def.'s R. 48 Mot., ECF No. 52, at 6. In August 2019, Mr. Evans moved to dismiss the complaint, arguing that the D.C. Superior Court lacked subject-matter jurisdiction over the case because the alleged crime took place entirely in Maryland. Def.'s R. 48

1

Mot. at 3; Gov't Opp'n to Def.'s R. 48 Mot. at 6–7. In October 2019, the Honorable Danya A. Dayson, the first D.C. Superior Court judge to preside over the case, ruled that the court properly possessed subject-matter jurisdiction. Gov't Opp'n to Def.'s R. 48 Mot. at 7. Mr. Evans's trial was scheduled for June 2020. *Id.* In the meantime, a grand jury returned an indictment charging him with several counts, including first-degree premeditated murder while armed, felony murder, robbery while armed, and kidnapping while armed. *Id.* Due to the COVID-19 pandemic, Mr. Evans's trial was continued and in March 2021, his trial was rescheduled for January 2022. *Id.*

In August 2021, Mr. Evans moved to dismiss the D.C. Superior Court indictment, again challenging that court's subject-matter jurisdiction. *Id.* at 7–8. In October 2021, the Honorable Neal E. Kravitz, to whom the case had been reassigned, suggested that the jurisdictional issue could only be resolved at trial, where the government would have the burden of proving where the fatal shot occurred. *Id.* at 8. Judge Kravitz acquiesced to the defense's request to submit supplemental briefing. *Id.* at 8–9. The trial was again rescheduled to February or March 2022. *Id.*

By January 2022, Mr. Evans's D.C. Superior Court case had again been reassigned, this time to the Honorable Maribeth Raffinan. *Id.* at 9. After a status conference, the defense presented supplemental briefing and petitioned the court to decide the jurisdictional issue before trial. *Id.* The government urged Judge Raffinan to delay ruling until trial, but on January 25, 2022, Judge Raffinan announced that she intended to rule on the jurisdictional issue before trial and directed the parties to file additional briefing on that issue. *Id.* at 9–10. The parties filed that briefing, but on February 21, 2022, before Judge Raffinan ruled on the jurisdictional issue, the government filed the present charges against Mr. Evans in this Court. Def.'s R. 48 Mot. at 3–4; Gov't Opp'n to Def.'s R. 48 Mot. at 10–11; Compl., ECF No. 1. The next day, the government informed Judge Raffinan of that development at a D.C. Superior Court hearing and then moved to dismiss the D.C.

2

Superior Court indictment against Mr. Evans without prejudice under D.C. Superior Court Rule 48—the local equivalent of Federal Rule of Criminal Procedure 48(a). Gov't Opp'n to Def.'s R. 48 Mot. at 11 & n.3. In July 2022, Judge Raffinan denied the government's request to dismiss the D.C. Superior Court indictment without prejudice, determining that the government had engaged in prosecutorial harassment.[1] Def.'s R. 48 Mot. at 4.

Mr. Evans has moved in this Court to dismiss his indictment on two grounds. First, he alleges that dismissal is warranted because the government violated Federal Rule of Criminal Procedure 16 and the Fifth Amendment's Due Process Clause when it failed to preserve the SUV and provided allegedly insufficient photographic evidence of the SUV. *See* Def.'s R. 16 Mot.; Def.'s Suppl. R. 16 Mot., ECF No. 48; Def.'s 2d Suppl. R. 16 Mot., ECF No. 61. In the alternative, Mr. Evans urges this Court to sanction the government for its failure to preserve the SUV by precluding expert testimony about it. *See* Def.'s R. 16 Mot. at 2. The government opposes Mr. Evans's motion, arguing that law enforcement extensively documented the SUV before returning it to its owner[2] and the government has made all photographic and documentary evidence available to the defense. *See* Gov't Opp'n to Def.'s R. 16 Mot., ECF No. 31; Gov't Opp'n to Def.'s Suppl. R. 16 Mot., ECF No. 57.

Mr. Evans also moves to dismiss his indictment pursuant to Federal Rule of Criminal Procedure 48(a) and the Fifth Amendment's Due Process Clause because of the government's charging practices in this case.[3] Def.'s R. 48 Mot.; Def.'s Reply to Gov't Opp'n to Def.'s R. 48

---

[1] The government appealed Judge Raffinan's ruling, arguing that she applied the incorrect legal standard for prosecutorial harassment under D.C. law. *See* Gov't Opp'n to Def.'s R. 48 Mot. at 13–14; Not. (Oct. 21, 2022), ECF No. 64.

[2] The vehicle's owner, Ms. Kimberly Wright-Stoddard, testified at a November 7, 2022 motions hearing before the undersigned that the government released the SUV back to her but that she never regained physical possession of the vehicle due to the significant damage it sustained during the incident. *See* Gov't Ex. 13.

[3] Mr. Evans moves to dismiss under Federal Rule of Criminal Procedure Rule 12, which requires that the defense of "defect in instituting the prosecution, including . . . preindictment delay" be raised prior to trial. Fed. R. Crim. P. 12(b)(3)(A)(ii).

3

Mot., ECF No. 59. Specifically, Mr. Evans argues that the government engaged in prosecutorial harassment by initially charging him in D.C. Superior court and then, when the court seemed poised to dismiss the case for lack of subject-matter jurisdiction, charging Mr. Evans in federal court but moving to dismiss the original indictment without prejudice. Def.'s R. 48 Mot. at 4–5. Additionally, Mr. Evans insists that this Court must dismiss the instant indictment based on Judge Raffinan's determination that the government had engaged in prosecutorial harassment. *Id.* at 5. Finally, he contends that the ten-year delay between the alleged crime and his indictment violated his due process rights. *Id.* The government opposes this motion as well, denying the allegations of prosecutorial harassment, contending that this Court is not bound by Judge Raffinan's determination, and asserting that Mr. Evans has not met his burden to establish a Due Process violation based on a pre-indictment delay. Gov't Opp'n to Def.'s R. 48 Mot. Mr. Evans's motions are ripe for review.

## II. LEGAL STANDARDS

### A. Due Process Clause

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

"[T]o establish a due process violation [for failure to preserve evidence], the *defendant* bears the burden of proving that the government failed *in bad faith* to preserve *material* and *potentially exculpatory* evidence." *United States v. McKie*, 951 F.2d 399, 403 (D.C. Cir. 1991) (emphases in original) (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)). When evaluating a situation of whether the failure "to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," the defendant must show "bad faith." *Youngblood*, 488 U.S. at 57–58. In these

4

situations, "bad faith cannot be inferred from the mere act of nonpreservation itself." *United States v. Taylor*, 312 F. Supp. 3d 170, 177 (D.D.C. 2018). In sum, "neither negligence nor incompleteness violates the Due Process Clause"—only bad faith. *Id.* at 179.

To establish a due process violation for pre-indictment delay, "a defendant must establish that the delay resulted in 'actual prejudice to the conduct of the defense' and that the government 'intentionally delayed to gain some tactical advantage' over the defendant." *United States v. Brodie*, 326 F. Supp. 2d 83, 87 (D.D.C. 2004) (quoting *United States v. Marion*, 404 U.S. 307, 325 (1971)). The proof of prejudice must "be definite and not speculative. Courts apply the actual prejudice test stringently." *United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995) (quoting *United States v. Butz*, 982 F.2d 1378, 1380 (9th Cir. 1993)). Not only must the prejudice be actual, it must be substantial. *Marion*, 404 U.S. at 325. "A mere loss of potential witnesses is insufficient absent a showing that their testimony would have actually aided the defense." *United States v. Crouch*, 84 F.3d 1497, 1515 (5th Cir. 1996) (internal citation omitted) (collecting cases).

### B. Federal of Criminal Procedure 16

Federal Rule of Criminal Procedure 16 requires that the government:

> permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. (16)(a)(1)(E). Evidence is material "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotation marks and citation omitted). The Circuit has held

that "duty of disclosure is operative as a duty of preservation." *United States v. Bryant*, 439 F.2d 642, 651 (D.C. Cir. 1971). While the holding in *Bryant* is somewhat suspect post-*Youngblood* because it also relied on the Due Process Clause, the Circuit has never "disavowed the Rule 16 analysis contained in *Bryant*." *Taylor*, 312 F. Supp. at 181. "The district court has wide discretion in imposing a sanction if it finds that Rule 16 has been violated." *United States v. Marshall*, 132 F.3d 63, 69 (D.C. Cir. 1998).

### C. Federal Rule of Criminal Procedure 48(a)

Under Federal Rule of Criminal Procedure 48(a), "[t]he *government* may, with leave of court, dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a) (emphasis added). It is well-settled that prosecutors are agents of the executive branch and that decisions to "dismiss charges once brought, lie[] at the core of the Executive's duty to see the faithful execution of the laws." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) (internal quotation marks and citation omitted) (alteration in original). As a result, "few subjects are less adapted to judicial review than the exercise by the Executive of [its] discretion in deciding when and whether to institute criminal proceedings, or what precise charges shall be made, or whether to dismiss a proceeding once brought." *Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967). Nevertheless, a district court has some supervisory authority over prosecutorial decisions through Rule 48(a), which requires the government to ask for "leave of court" to dismiss an indictment. *See United States v. Flynn*, 507 F. Supp. 3d 116, 126–28 (D.D.C. 2020).

That said, the "principal object of the 'leave of court' requirement has been understood to be a narrow one—'to protect a defendant against prosecutorial harassment.'" *Fokker*, 818 F.3d at 742 (citing *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977)). Such "prosecutorial harassment" occurs when prosecutors exhibit "repeated efforts to bring—and then dismiss—charges." *Id.*

"Numerous courts have held that the presence or absence of good faith is important in determining whether dismissal without prejudice and prosecution on a new indictment are permissible." *Workman v. United States*, 255 A.3d 971, 977–78 (D.C. 2021) (collecting cases); *see Rinaldi*, 434 U.S. at 30.

### D. Collateral Estoppel

"The collateral estoppel doctrine, which has its roots in the civil law, 'prevent[s] repetitious litigation of the same issue by the same parties.'" *United States v. McMillian*, 898 A.2d 922, 931 (D.C. 2006) (citing *Laughlin v. United States*, 344 F.2d 187, 189 (D.C. Cir. 1965) (alteration in original)). Collateral estoppel is "an established rule of federal criminal law." *Ashe v. Swenson*, 397 U.S. 436, 444 (1970). Under the Full Faith and Credit Act, federal courts must give preclusive effect to qualifying state court judgments. *See* 28 U.S.C. § 1738; *Allen v. McCurry*, 449 U.S. 90, 105 (1980). State law determines the requirements for issue preclusion to apply. *See Kremer v. Chemical Construction Co.*, 456 U.S. 461, 481–82 (1982).

### III. DISCUSSION

### A. Mr. Evans Has Not Established That the Government Violated the Due Process Clause or Federal of Criminal Procedure Rule 16 When Failing to Preserve the SUV

Mr. Evans first moves to dismiss his indictment because the government did not "preserve material and potentially exculpatory evidence" in violation of Federal Rule of Criminal Procedure 16 and the Due Process Clause. *See* Def.'s R. 16 Mot. at 1. Mr. Evans raises two related arguments: (1) that the government failed to preserve the SUV in which Mr. Ware was killed for the defense to inspect and (2) the photographs of the SUV taken by the government after the incident and before the SUV was returned to its owner are "insufficient in scope and, many of them, of unusable quality." Def.'s 2d Suppl. R. 16 Mot. at 1. In support of his claims, Mr. Evans retained LeeAnn Singley, a forensic scientist and blood spatter expert, who concluded that "there were insufficient

7

overall photographs received (i.e., photographs that depict the entire rear interior of the vehicle) to determine the extent of the bloodstain patterns" and "some of the photographs" "were of insufficient quality to evaluate for the presence or absence of blood or bloodstain patterns." Singley 1st Aff., Ex 1 to Def.'s Suppl. R. 16 Mot., ECF No. 48-1, at 2–3; *see also* Singley 2d Aff., Ex 1 to Def.'s 2d Suppl. R. 16 Mot., ECF No. 61-1, at 1 ("Upon review and examination of these original photographs, the determinations and conclusions drawn in the previous declaration remain unchanged"). Additionally, Mr. Kenneth Martin, an expert in crime scene processing, testified at a November 7, 2022 motions hearing before the undersigned that, in his opinion, the existing photographs of the SUV's interior are insufficient in both quality and quantity for Mr. Evans's defense to contest certain conclusions drawn by the government's expert. The government argues that the SUV was extensively photographed, swabbed for DNA, tested, and its condition documented in the days after the incident. Gov't Opp'n to Def.'s Suppl. R. 16 Mot. at 3. The government further notes that it had no obligation to indefinitely preserve the SUV. *Id*.

The government did not violate the Mr. Evans's rights under the Due Process Clause through its handling of the SUV. The government immediately took possession of the vehicle after finding Mr. Ware's body on May 2, 2009. Def.'s R. 16 Mot. at 3. One expert—Lt. Richard Hinds—conducted a visual examination of the SUV on May 7, 2009 and issued a report on May 20, 2009. *Id.* During that examination, 38 photographs of the SUV were taken. *Id.* Other law enforcement officers photographed and processed the SUV on May 10, 2009. *Id.* at 4. The processing included swabbing for blood and other biological evidence and conducting a "trajectory analysis." Gov't Opp'n to Def.'s R. 16 Mot. at 2. Finally, a second expert—Officer William Greene—conducted a visual examination of the SUV on May 18, 2009, took approximately 16 photographs, and issued a report on May 19, 2009. Def.'s R. 16 Mot. at 4. On June 23, 2009, the government released the

vehicle back to its owner because no suspects had been identified. Gov't Opp'n to Def.'s Suppl. R. 16 Mot. at 1.

Mr. Evans alleges that the officers "had to have known that the SUV could have potentially exculpatory value." Def.'s R. 16 Mot. at 11. Even if this is true, he has not fulfilled his burden of showing bad faith. The officers formally processed the SUV, including conducting multiple expert examinations, performing biological and forensic swabbing, and taking numerous photographs. The SUV was then released back to its owner because, at the time, law enforcement did not have any suspects. The Court is aware of no authority for the proposition that the Due Process Clause requires law enforcement officials to maintain possession of a private vehicle involved in a criminal act, indefinitely, in case a suspect is eventually identified. The police did not destroy the SUV or attempt to eliminate its use for trial and the government has made the evidence that it gathered, and relies upon, available to the defense. These circumstances do not constitute bad faith.

Similarly, the failure to retain possession of the SUV does not violate Federal of Criminal Procedure Rule 16. The government has provided the defense at least 74 photographs of the vehicle as well as expert reports on blood spatter analysis, firearms, and trajectory. Gov't Opp'n to Def.'s R. 16 Mot. at 3. This is a "substantial and meaningful production." *United States v. Slough*, 22 F. Supp. 3d 1, 6 (D.D.C. 2014). If the defense's experts are of the opinion that the photographs do not make it possible to draw certain conclusions, the remedy is for them to say so in their trial testimony. And if the government intends to rely on "alleged observations [by experts] that are not captured by the photographic evidence," Def.'s R. 16 Mot. at 9, the defense can cross-examine the experts with the numerous contemporaneous photographs. Because the Court does not find that Rule 16 was violated, the Court will not grant Mr. Evans's request for sanctions.[4]

---

[4] Even if the Court were to have found a Rule 16 violation, the cases Mr. Evans cites to justify the imposition of sanctions without a bad faith finding are non-binding on this Court and clearly distinguishable. Mr. Evans first cites

### B. The Court Is Not Required—and Declines—to Dismiss the Indictment Against Mr. Evans Under Federal of Criminal Procedure Rule 48(a)

Mr. Evans next moves to dismiss the indictment under Federal Rule of Criminal Procedure 48(a). He argues that this Court must give preclusive effect to Judge Raffinan's finding of prosecutorial harassment and, because of that finding, dismiss the federal case with prejudice. The Court disagrees.

As a threshold matter, Federal Rule of Criminal Procedure 48(a) requires the *government* to seek leave of court before voluntarily dismissing an indictment without prejudice, which the government has not sought leave to do in this Court. *See* Gov't Opp'n to Def.'s R. 48 Mot. at 17. The Rule itself does not empower the Court to dismiss a second indictment against a defendant on that defendant's motion because another court has denied leave to dismiss the first one without prejudice. Mr. Evans cites three cases in which the government's Rule 48(a) motion to dismiss the first indictment without prejudice was *granted* and then a court dismissed the second indictment (or reversed a conviction based on the second indictment), effectively converting the first dismissal to one with prejudice, as a remedy for taking the government at its word the first time around. *See* Def.'s R. 48 Mot. at 9–10 (citing *United States v. Derr*, 726 F.2d 617, 618 (10th Cir. 1984); *United States v. Salinas*, 693 F.2d 348, 350 (5th Cir. 1982); *United States v. Fields*,

---

to *United States v. Sivilla*, which found that a sanction was appropriate when "[t]he prosecutor promised to protect the evidence but failed to take any affirmative action to that end[, t]he government attorney prosecuting the case participated in the events leading to the failure to preserve[, and i]n total, the quality of the government's conduct was poor." Def.'s R. 16 Mot. at 10; 714 F.3d 1168, 1173 (9th Cir. 2013). Here, there is no allegation of similar levels of negligence or misconduct by government investigators when processing and returning the vehicle or in the years leading up to the indictment. Mr. Evans's invocation of *United States v. Macken*, No. 2:20-cr-23 (KJM), 2021 WL 3738897, at *1 (E.D. Ca. 2021), is similarly unavailing. He cites this case for the proposition that "in cases where there is a failure to preserve useful evidence but the government did not act in bad faith, a district court may still impose sanctions including suppression of secondary evidence." Def.'s R. 16 Mot. at 10; 2021 WL 3738897, at *5 (internal quotations and citation omitted). In that case, the court determined that sanctions were appropriate after the police failed to conduct fingerprint or DNA testing on a paintball gun, which was the single most critical piece of potentially exculpatory evidence for the defendant. *Id.* at *1–2. As the government in this case points out, the SUV was "fully processed" through the gathering of photographic, DNA, and fingerprint evidence before it was returned to its owner. Gov't Opp'n to Def.'s R. 16 Mot. at 7–8.

475 F. Supp. 903, 904 (D.D.C. 1979)). But Mr. Evans does not cite any authority for the proposition that where, as here, one court denies the local equivalent of a Rule 48(a) motion and declines to dismiss the first indictment without prejudice, another court is then *required* to exercise its supervisory power to dismiss the second indictment with prejudice. In other words, regardless of what preclusive effect Judge Raffinan's finding is due, Rule 48(a) is not an appropriate mechanism for seeking a dismissal with prejudice on the defendant's motion in the present procedural posture.[5]

Additionally, Mr. Evans looks to the wrong legal standard in attempting to convince this Court to independently find that the government's actions amount to prosecutorial harassment. He insists that the "primary concern" of Rule 48(a) is "protecting a defendant from harassment, through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution." Def.'s R. 48 Mot. at 5 (quoting *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973)). However, the government is correct that the later decisions of *Rinaldi* (Supreme Court) and *Fokker* (Circuit) abandoned the "more favorable to the prosecution" requirement. *See* Gov't Opp'n to Def.'s R. 48 Mot. at 24 n.14 (citing *Rinaldi*, 434 U.S. at 29 n.15; *Fokker*, 818 F.3d at 742). And as the D.C. Court of Appeals and several federal circuit courts—including this Circuit—agree, "a flat rule that the government engages in impermissible harassment any time it dismisses an indictment in the hope of later reindicting the defendant

---

[5] Even if this Court had the discretion to dismiss the second indictment, this Court would not, because Judge Raffinan's dismissal of the first indictment with prejudice is sufficient to vindicate the purpose of Rule 48(a) and its D.C. local equivalent. And the government has represented both to D.C. Superior Court and to Mr. Evans that it does not intend to bring the same case against him there. Gov't Opp'n to Def.'s R. 48 Mot. at 25. Indeed, unless the government succeeds on appeal of Judge Raffinan's order, it *cannot* bring the case there again.

11

under more favorable circumstances" is "both unwarranted and contrary to the weight of authority." *Workman*, 255 A.3d at 975 (referencing *Fokker*, 818 F.3d at 742).

Furthermore, even if the Court were required or permitted to dismiss a second indictment with prejudice based on another court's finding of prosecutorial harassment for purposes of Rule 48 or its local equivalent, Judge Raffinan's finding would not have preclusive effect in this case based on principles of collateral estoppel. Mr. Evans argues that "a combination of federal and District of Columbia law requires this Court to give preclusive effect" to Judge Raffinan's finding of prosecutorial harassment. Def.'s R. 48 Mot. at 12. Specifically, he insists that her ruling meets the procedural criteria for collateral estoppel under D.C. law, and thus the Full Faith and Credit Act, 28 U.S.C. § 1738, requires this Court to give preclusive effect to her ruling. *See id.* at 12–13. The government argues that the ruling is not subject to issue preclusion because jeopardy had not attached. *See* Gov't Opp'n to Def.'s R. 48 Mot. at 27–30.[6] Mr. Evans opposes the government's argument that jeopardy must attach for issue preclusion to apply, relying primarily on two cases: *United States v. Oppenheimer*, 242 U.S. 85 (1916) and *Laughlin v. United States*, 344 F.2d 187 (D.C. Cir. 1965). *See* Def.'s Reply to Gov't Opp'n to Def.'s R. 48 Mot. at 2–4.

Mr. Evans's reliance on *Oppenheimer* and *Laughlin* is misplaced. In *Oppenheimer*, the Supreme Court affirmed the lower court's bar on a second indictment against the same defendant for the same offense when the earlier indictment was dismissed as time-barred. *See* 242 U.S. at 87–88. In *Laughlin*, which relied in part on *Oppenheimer*, the Circuit held that the district court's decision to exclude illegal evidence in the defendant's first prosecution, which resulted in a

---

[6] The government also argues that Judge Raffinan's ruling was not a "qualifying final ruling" under D.C. law and thus need not be given preclusive effect on this basis either. *See* Gov't Opp'n to Def.'s R. 48 Mot. at 30. Because the Court agrees with the government's first argument, it need not address the second.

mistrial and the dismissal of the first indictment, must be given preclusive effect in a later prosecution of the same defendant on a different charge. *See* 344 F.2d at 191–92.

Though this Circuit has not opined on the precise holding of *Oppenheimer*, the Second Circuit noted that "[s]ince *Oppenheimer*, there has been much debate on whether that case was grounded in the Double Jeopardy Clause or in broader Due Process arguments." *United States v. Dionisio*, 503 F.3d 78, 85 (2d Cir. 2007) (collecting cases). The Second Circuit went on to say that "that discussion is neither here nor there" because the Supreme Court more recently clarified that res judicata and collateral estoppel are "ingredient[s] of the Fifth Amendment guarantee against double jeopardy." *Id.* (citing *Ashe v. Swenson*, 397 U.S. 436, 442 (1970) (alteration in original)). This reading of collateral estoppel as connected to jeopardy comports with our Circuit's understanding. *United States v. Burroughs*, 810 F.3d 833, 838–39 (D.C. Cir. 2016) (quoting *Harris v. Washington*, 404 U.S. 55, 56 (1971) (per curiam) ("Criminal collateral estoppel is generally 'an integral part of the protection against double jeopardy guaranteed by the Fifth and Fourteenth Amendments.'")).

The Court is also persuaded by the government's argument that the proper characterization of D.C. preclusion law in the criminal context, which requires jeopardy to attach, is embodied in *United States v. McMillian*, 898 A.2d 922 (D.C. 2006). *See* Gov't Opp'n to Def.'s R. 48 Mot. at 27–28. In that case, the D.C. Court of Appeals emphasized that "[c]onsistent with our view of [the] limited applicability" of issue preclusion in criminal cases, "we have applied the collateral estoppel doctrine in criminal cases where constitutional double jeopardy has been implicated." *McMillian*, 898 A.2d at 931 (citations omitted). Furthermore, the *McMillian* court carefully distinguished and cabined *Laughlin*, calling it "an unusual case, decided prior to the Supreme Court's decision in *Ashe*." *Id.* at 932. But most importantly, the district court decision at issue in *Laughlin*—the

13

exclusion of illegal evidence—occurred in the context of the court's ruling on the defendant's motion for a mistrial, and thus jeopardy had already attached. *Id.* In other words, *Laughlin* actually undermines, rather than supports, Mr. Evans's position.

No jury had been sworn nor had any evidence been presented in Mr. Evans's case in D.C. Superior Court, therefore jeopardy had not attached when Judge Raffinan made her ruling. *See Coley v. United States*, 267 A.3d 1065, 1067 (D.C. 2022). Because jeopardy had not attached, this Court will follow the long-established practice of declining to apply collateral estoppel in a criminal case absent a jeopardy attachment.

### C. Mr. Evans Has Not Established That the Government Violated the Due Process Clause Based on A Pre-Indictment Delay

Finally, Mr. Evans moves to dismiss the indictment under the Due Process Clause for pre-indictment delay. The Court concludes that Mr. Evans has not meet his burden to establish a due process violation based on any pre-indictment delay, and therefore the Court is not required to dismiss the indictment on this basis. First, Mr. Evans has not shown that any pre-indictment delay was intentional on the part of the government. He faults the government for not advancing any reasons for its delay in charging Mr. Evans. *See* Def.'s Reply to Gov't Opp'n to R. 48 Mot. at 4–5. But that burden rests on Mr. Evans, not the government. *See United States v. Pollack*, 534 F.2d 964, 969 (D.C. Cir. 1976) (defendant must show that the "government acted with impropriety").[7] Mr. Evans does not meet this standard because he does not cite any evidence that the government intentionally or recklessly delayed charging him.

Furthermore, Mr. Evans has not established that the pre-indictment delay resulted in the loss of any key exculpatory evidence. In insisting that he has, in fact, suffered actual prejudice,

---

[7] The defense urges the Court that the due process inquiry requires only the lesser standard laid out by the Eleventh Circuit in *United States v. Foxman*, 87 F.3d 1220, 1223 n.2 (11th Cir. 1996) ("intentional government acts designed to obtain a tactical advantage which only incidentally cause delay have never been ruled out as a potential basis for

14

he points to three pieces of evidence no longer available to him allegedly due to the delay: (1) the SUV, (2) an "exculpatory witness" whose memory has since faded, and (3) another "exculpatory witness" who died prior to the government bringing charges. Def.'s R. 48 Mot. at 2. In his reply, Mr. Evans avers more allegedly exculpatory evidence that is no longer available, such as bank records, another witness, and a phone.[8] Def.'s Reply to Gov't Opp'n to R. 48 Mot. at 6–7.

Mr. Evans's objections about the lost physical evidence do not establish actual prejudice. As discussed above, returning the SUV to its rightful owner did not deprive Mr. Evans of the opportunity to interrogate the government's reports, photographs, and testing of the SUV. And he has not explained how the other physical evidence identified in his reply actually prejudiced his defense beyond mere—impermissible—speculation. *See United States v. Burnett*, 827 F.3d 1108, 1116 (D.C. Cir. 2016) ("Not only ha[s] the defendant[] failed to prove bad faith, [he] also ha[s] advanced no credible argument that the [lost] evidence was potentially exculpatory, which is a separate requirement to succeed on this kind of due process claim.") (internal quotation marks and citation omitted).

His arguments with respect to the witnesses are similarly unavailing. Mr. Evans argues that he was prejudiced because Witness-3, who in 2009 gave law enforcement a physical description of an individual fleeing the SUV that "differed from Mr. Evans in significant respects," now can no longer recall what the suspect looked like. Def.'s R. 48 Mot. at 17. As the Circuit has made clear, "[m]emories inevitably dim with the passage of time" and thus faded

---

due process violations"). *See* Def.'s R. 48 Mot. at 21. Mr. Evans counsels that this Court ought to follow that standard because "[t]he Eleventh Circuit's opinion has since been cited by a trial court in this circuit." *Id.* at 20. While it is true that *United States v. Brodie*, 326 F. Supp. 2d 83, 87 (D.D.C. 2004), cited *Foxman*, the court did so after laying out the *correct* standard—intentional delay and actual prejudice—and declined to endorse the language in *Foxman* leaving open the possibility that incidental delays could create due process violations.

[8] At the November 7 motions hearing, counsel for Mr. Evans argued that more potentially exculpatory evidence—in the form of cell site records—is similarly unavailable. Because this argument was not raised in Mr. Evans's filings, it will not be considered. *See United States ex rel. Davis v. District of Columbia*, 793 F.3d 120, 127 (D.C. Cir. 2015).

memories, standing alone, are not sufficient to show prejudice. *United States v. Bridgeman*, 523 F.2d 1099, 1112 (D.C. Cir. 1975). Even so, as the government points out, Witness-3 spoke with law enforcement several times during the course of the investigation and those statements may very well be admissible.[9] *See* Gov't Opp'n to Def.'s R. 48 Mot. at 37–38.

In addition, the Court is skeptical that the purportedly exculpatory witness who is now deceased, Scorpio Phillips, would actually have been an exculpatory witness. Phillips, the suspected driver of the SUV, spoke to law enforcement in 2014 but denied knowledge of or involvement in Mr. Ware's death. *See id.* at 39. This is a far cry from exculpatory statements for Mr. Evans. Mr. Evans replies that Phillips may still have helped his defense by contradicting testimony of Witness-8, a key government witness. *See* Def.'s Reply to Gov't Opp'n to Def.'s R. 48 Mot. at 5–6. But, as the government correctly notes, had Phillips survived until the time that the government brought charges related to Mr. Ware's death, Phillips could very well have faced potential charges of his own. Gov't Opp'n to Def.'s R. 48 Mot. at 39–40. Furthermore, Mr. Evans's assumption that Phillips would have testified on his behalf ignores both the significant self-incrimination risk Phillips would have faced by testifying and his ability to exercise his Fifth Amendment right against self-incrimination. *Id.* Regardless, "[t]he death of a witness, however, is not an occasion to dismiss [indictments] on the basis of speculation about what the lost evidence might have suggested." *In Re Sealed Case*, 494 F.3d 139, 151 (D.C. Cir. 2007).

---

[9] Similarly, Mr. Evans's case citations finding a due process violation based on witness unavailability miss the mark. All of the cases he cites involved situations where the defendant was unable to produce *any* witness in his defense, which is plainly not the case here. *See* Def.'s R. 48 Mot. at 17, 19; *United States v. Santiago*, 987 F. Supp. 2d 465, 485 (S.D.N.Y. 2013) (one of the other two alleged shooters (besides the defendant) was unavailable to testify and the other shooter had invoked their right not testify); *United States v. Sabath*, 990 F. Supp. 1007, 1012 (N.D. Il. 1998) ("sole witness" no longer had an independent recollection of the key events of the night); *United States v. Barket*, 530 F.2d 189, 196 (8th Cir. 1976) (all potentially exculpatory witnesses were "dead or unable to recall circumstances that existed more than five years ago").

Finally, the inability to locate Witness-4, who Mr. Evans argues would contradict testimony from key government witnesses, *see* Def.'s Reply to Gov't Opp'n to Def.'s R. 48 Mot. at 7, does not establish prejudice. *See United States v. Jones*, 524 F.2d 834, 844 (D.C. Cir. 1975) ("prejudice is not satisfied by" "the slender hope that a witness, now unavailable, might have been able to come forth with testimony favorable to the defense") (internal quotation marks and citation omitted).

* * *

Mr. Evans has not met his burdens to convince this Court that the government violated Federal Rule of Criminal Procedure 16 or his rights under the Fifth Amendment's Due Process Clause. Nor has he persuaded this Court that it is required or permitted to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 48(a). Therefore, this Court will not dismiss the indictment against him.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Evans's motions to dismiss are hereby **DENIED**. A separate and consistent Order shall issue this date.


SIGNED this 8th day of November, 2022.

/s/ Royce C. Lamberth  
Royce C. Lamberth  
United States District Judge